JOHN B. HULL, INC., The Sandmeyer Oil Company, Community Petroleum Products, Inc., and Dutchess Auto Company, Plaintiffs,

v.

WATERBURY PETROLEUM PRODUCTS, INC., Defendant.

WATERBURY PETROLEUM PRODUCTS, INC., Third Party Plaintiff–Appellant,

v.

C.A. LINDELL & SON, INC., Third Party Defendant–Appellee.

No. 1003, Docket 87–7760.

United States Court of Appeals, Second Circuit.

Argued April 8, 1988.

Decided May 2, 1988.

Michael F. Dowley, Middletown, Conn., for third party plaintiff-appellant, Waterbury Petroleum Products, Inc.

David S. Golub, Stamford, Conn. (Silver, Golub and Sandak, of counsel), for third party defendant-appellee, C.A. Lindell & Son, Inc.

Before LUMBARD, OAKES and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

Waterbury Petroleum Products, Inc. (WPP) appeals from two orders of Judge Nevas of the District Court for Connecticut. One order dismissed WPP's antitrust damage claims against C.A. Lindell & Son, Inc. (Lindell) for WPP's failure to comply with Lindell's discovery requests and three court orders compelling WPP to comply with these requests; the other awarded attorney's fees to Lindell for its efforts to secure this discovery. WPP claims that the district court abused its discretion by dismissing its complaint and assessing attorney's fees. Lindell claims that WPP's appeal is frivolous and, consequently, that WPP should be ordered to pay Lindell's legal fees for this appeal.

We affirm both orders of the district court.

## I.

The controversy between WPP and Lindell is a survivor of litigation which began thirteen years ago. During the 1970's, John B. Hull, Inc., The Sandmeyer Oil Company, Community Petroleum Products, Inc., and Dutchess Auto Company were selling heating oil in an area referred to as the Northwest Corner. The Northwest Corner encompasses parts of northwest Connecticut, southwest Massachusetts, and an adjacent area in New York. In 1975, WPP, a distributor of heating oil in the Waterbury, Connecticut area, undertook to gain a share of the heating oil business in the Northwest Corner. Two years later, the four companies commenced a civil antitrust action against WPP, alleging that the new competitor's pricing policy constituted unlawful price discrimination in violation of Section 2(a) of the Clayton Act, as amended by the Robinson–Patman Act, 15 U.S.C. Section 13(a). The plaintiffs sought preliminary injunctive relief. After conducting a five-day evidentiary hearing in the fall of 1977, Magistrate F. Owen Eagan submitted a proposed ruling based on specific findings of facts and recommended the granting of injunctive relief. Judge T. Emmet Clarie "adopted, ratified and confirmed" the magistrate's recommended ruling and,

in March 1978, issued a preliminary injunction requiring WPP to establish a single base price for sales of heating oil. We affirmed the injunction with modification. *John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.,* 588 F.2d 24, 30–31 (2d Cir.1978), *cert. denied,* 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979).

On April 18, 1978, WPP answered the complaint and interposed three counterclaims. The counterclaims alleged that the four plaintiffs and a fifth company, Lindell, conspired in the pricing of heating oil in the Northwest Corner, in violation of the Sherman Act (first count) and Connecticut Antitrust Laws (second count), and causing independent torts under the laws of Connecticut (third count). Approximately one year later, WPP initiated a third-party action against Lindell.

The allegations in WPP's three count amended third-party complaint were nearly identical to the three counterclaims WPP filed against the four original plaintiffs. In its first count, WPP alleged that Lindell and the four original plaintiffs conspired to restrain trade and monopolize the heating oil business in the Northwest Corner in violation of the Sherman Act, 15 U.S.C. Sections 1 and 2. This first count also alleged discriminatory pricing practices. In its second count, WPP alleged that the conspirators violated the Connecticut Antitrust Laws, Conn.Gen.Stat. Sections 35–24 to 35–45. The third count alleged that the conspirators' conduct constituted "independent torts" under the law of Connecticut.

In response, Lindell filed its third-party answer and interposed two counterclaims. The first counterclaim mirrored the allegations in the four original plaintiffs' complaint, that is, that WPP's pricing policy constituted unlawful price discrimination in violation of Section 2(a) of the Clayton Act, as amended by the Robinson–Patman Act, 15 U.S.C. § 13(a). Lindell's second counterclaim alleged that WPP's pricing practices violated Connecticut's antitrust law prohibiting price discrimination in commercial transactions.

On June 18, 1979, plaintiffs' application for a prejudgment remedy was granted.

On September 10, 1979, the four original plaintiffs and WPP agreed to the entry of a judgment wherein, among other things, WPP was obligated to establish a single base price for the sale of heating oil. With the original action between the four original plaintiffs and WPP resolved by judgment, all that remained was WPP's third-party action against Lindell and Lindell's counterclaims.

At the end of 1981, Lindell moved for partial summary judgment and WPP cross-moved for partial summary judgment. Lindell later filed a supplemental summary judgment motion. Magistrate Eagan recommended denial of Lindell's motion for partial summary judgment on WPP's antitrust conspiracy claims under the Sherman Act (first count), and under the Connecticut Antitrust Act (second count) insofar as WPP's conspiracy claims based on the Connecticut antitrust law. The magistrate, however, recommended summary judgment in Lindell's favor on both WPP's discriminatory price claim and attempt to monopolize claim. The third count of the amended third-party complaint alleging pendent state law torts was not at issue. WPP's motion for partial summary judgment was denied. Judge Clarie affirmed the magistrate's recommended rulings.

Beginning with interrogatories filed on July 9, 1981, Lindell sought through various discovery requests a delineation of WPP's alleged damages, its theories of liability and causation, and the factual support for its antitrust claims. Specifically, Lindell sought information as to (1) the amount of each element of WPP's claimed damages; (2) the factual basis on which each such element of damages has been calculated; (3) the factual basis and evidence upon which WPP relies for its claims of wrongful conduct and resulting loss; and (4) WPP's factual and legal theories of causation relating to its claimed losses and Lindell's wrongful conduct.

On August 10, 1981, WPP responded by answering portions of two interrogatories and refusing to answer the other interrogatories. Lindell moved for an order compelling WPP to answer the interrogatories.

On October 6, 1981, after meeting with the parties and hearing argument on pending motions, Magistrate Eagan issued an order requiring WPP to answer specified interrogatories by October 16, 1981.

On October 22, 1981, WPP filed its "Supplemental Response to Third-Party Defendant's First Set of Interrogatories". Maintaining that this response was inadequate to satisfy Magistrate Eagan's order, Lindell moved for the imposition of sanctions against WPP on November 3, 1981. On January 11, 1982, Magistrate Eagan, in response to Lindell's request, stayed further discovery pending a ruling on Lindell's motion.

In July 1982, Lindell moved for summary judgment on the third count which alleged pendent state law torts. Magistrate Eagan recommended summary judgment in Lindell's favor on the third count. Judge Clarie affirmed the magistrate's ruling. As a result, the controversy was reduced to WPP's third-party action against Lindell in which WPP asserted two antitrust claims and Lindell countered with two counterclaims.

The motion for sanctions was still pending on December 19, 1983, when the parties appeared before Judge Clarie to select a jury. Judge Clarie heard argument on the motion for sanctions. Following argument by both sides, Judge Clarie then warned WPP twice that its failure to supply the information sought in Lindell's interrogatories by January 13, 1984, would result in the action's dismissal. Judge Clarie's warning was clear—"if [i]t [all claims for damages and a breakdown of those claims] isn't produced, the case will be dismissed." Judge Clarie reduced his ruling to writing by endorsing Lindell's motion for sanctions as follows:

> Waterbury Petroleum Products, Inc. shall answer all pending interrogatories and disclose all claims for damages and a breakdown thereof on or before January 13, 1984. Failure to comply will result in a dismissal of Waterbury Petroleum Product's claim for damages. So ordered.

On January 13, 1984, WPP filed a document entitled "Supplemental Disclosure Concerning Damage Claims." Despite Judge Clarie's order, WPP's document did not provide a detailed breakdown of its damage claims. Lindell sought an order of dismissal, arguing that WPP flagrantly failed to comply with Judge Clarie's 1983 order and Magistrate Eagan's 1981 order. The motion was referred to Magistrate Eagan. While Lindell's motion was pending, this action was transferred to Judge Nevas.

On April 11, 1986, Magistrate Eagan found that WPP's "Supplemental Disclosure" was incomplete and not specific; he viewed WPP's noncompliance with his and Judge Clarie's prior orders in the case as "serious." He then held that "WPP's claim for damages will be dismissed unless WPP files a *complete* and *specific* itemized list of damages claimed as well as *complete* and *specific* answers to the fourteen outstanding interrogatories" by May 1, 1986. (emphasis in original). The magistrate further held that the "[f]ailure to comply with this order, in light of the history of noncompliance in this case, will be viewed as evidence that WPP has acted in bad faith, or at least with gross professional negligence, warranting the sanction of dismissal." Magistrate Eagan denied Lindell's motion for entry of an order of dismissal without prejudice but awarded Lindell attorney's fees and costs. Judge Nevas reviewed the magistrate's recommended ruling and approved it on May 1, 1986.

Also on May 1, in response to Magistrate Eagan's ruling, WPP filed its "Discovery Compliance with Court Order Dated April 10, 1986." Lindell then moved for entry of an order of dismissal under Rule 37, maintaining that WPP's document was still inadequate.

On January 13, 1987, after examining WPP's responses, Judge Nevas granted Lindell's motion for an order of dismissal pursuant to Fed.R.Civ.P. 37(b)(2)(C). Judge Nevas imposed the sanction of dismissal because WPP had "failed to comply with the most recent of three court orders

requiring it to completely and fully answer Lindell's interrogatories and to specify the basis for its damages."

On April 7, 1987, Lindell filed a motion for an award of attorney's fees and costs, pursuant to Fed.R.Civ.P. 37(b)(2), for WPP's failure to comply with discovery orders. In conjunction with this motion, the parties stipulated that the fair value of Lindell's legal expenses in its efforts since July 1981 to obtain discovery from WPP on liability and damages was $27,500. In his affidavit, Lindell's counsel stated that those costs had been incurred and that they were "directly attributable to Lindell's attempts to obtain discovery from WPP of WPP's factual claims of liability and specifications of damages and WPP's continuing refusal to provide such information." On July 30, 1987, Judge Nevas granted Lindell's motion. He read Rule 37(b)(2) as mandating the reimbursement of attorney's fees and costs unless the court finds that the noncomplying party's failure to comply with the order is substantially justified or that other circumstances mitigate against an award of expenses. Finding no such justification for, or circumstances in mitigation of, WPP's failure to comply with the court's production orders, Judge Nevas awarded Lindell $27,500 in fees and costs.

## II.

■ Fed.R.Civ.P. 37(b)(2) provides, in pertinent part, that when "a party fails to obey an order to provide or permit discovery," the court may sanction that party by entering "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." The imposition of sanctions under Rule 37 is within the discretion of the district court and a decision to dismiss an action for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam); *Argo Marine Systems, Inc. v. Camar Corporation*, 755 F.2d 1006, 1015 (2d Cir.1985).

The record demonstrates that Judge Nevas was fully justified in dismissing WPP's complaint for its failure to obey repeated orders to provide discovery to Lindell.

WPP's failure to comply with the discovery orders issued by Judges Clarie and Nevas and Magistrate Eagan is best illustrated by its responses to Lindell's interrogatories requesting that WPP break down its damage claims, provide its theories of causation, specify how it calculated those damages, identify the documents relied on to calculate the damages, identify the documents containing its calculations, and identify those individuals who participated in calculating the damages. As this request was made in the course of discovery for a trial whose purpose would be to assess damages, it was clearly a proper request. Nonetheless, WPP has repeatedly refused to answer this request. Finally, ordered to comply with that request with specificity, WPP merely replied that the amount of damages and the other requested information was set forth in other documents. Following its finding that this response was inadequate, the court again ordered WPP completely and specifically to answer each portion of the damages interrogatory; nonetheless, WPP again merely reiterated the unsupported damage amounts it had alleged since the beginning of the litigation. It did not state how the amount was calculated, break down the damages into their components, nor identify the documents relied on in calculating damages. We agree with Judge Nevas's finding that the answers provided were inadequate.

Of course the sanction of "[d]ismissal under Fed.R.Civ.P. 37 is a drastic remedy that should be imposed only in extreme circumstances," *Salahuddin v. Harris*, 782 F.2d 1127, 1132 (2d Cir.1986), quoting *Israel Aircraft Indus., Ltd. v. Standard Precision*, 559 F.2d 203, 208 (2d Cir.1977), usually after consideration of alternative, less drastic sanctions. Dismissal under Rule 37 is warranted, however, where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault. *See Salahuddin* at 1132; *Cine Forty–Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066–68 (2d

Cir.1979). We agree with Judge Nevas that the flagrant disregard of court orders in this case justified the imposition of the sanction of dismissal: WPP failed to provide any meaningful discovery concerning a core trial issue despite three clear court orders, which included two warnings that dismissal would follow if WPP failed to provide adequate responses to Lindell's request. We agree with Judge Nevas's dismissal of WPP's complaint pursuant to Fed.R.Civ.P. 37(b)(2).

We also agree with Judge Nevas's award of attorney's fees to Lindell. Rule 37(b)(2) mandates the court to require "the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make awarding of expenses unjust." Since, as Judge Nevas found, WPP has neither offered a satisfactory explanation for its failure to comply with the court's orders nor demonstrated circumstances that would make the award unjust, we affirm Judge Nevas's award to Lindell of $27,500, in fees and expenses. We find sanctions for this appeal to be unwarranted.

Affirmed.