Eleanor MONAGHAN, Individually and as Guardian Ad Litem for William Monaghan, an incompetent, Plaintiffs,

v.

SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Defendant.

SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Third–Party Plaintiff,

v.

The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, and Port Authority Trans–Hudson Corp., Third–Party Defendants.

SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Second–Third–Party Plaintiff,

v.

TISHMAN CONSTRUCTION CORPORATION OF NEW YORK, McLane Security, Inc., Second–Third Party Defendants.

No. 89 Civ. 4900 (RWS).

United States District Court, S.D. New York.

May 5, 1993.

Levy Phillips & Konigsberg, New York City (Alan J. Konigsberg, of counsel), for plaintiffs.

Bower & Gardner New York City (Warren Sanger, of counsel), for defendant SZS 33 Associates, Inc.

Lester Schwab Katz & Dwyer, New York City (Adam Hurwitz, of counsel), for defendant R.B. McLane Associates, Inc.

Gordon & Silber, New York City (Steven Sold, of counsel), for defendant Tishman Const. Corp.

## OPINION

SWEET, District Judge.

Plaintiff Eleanor Monaghan, individually and as a guardian ad litem for her husband

William Monaghan ("Monaghan," collectively, the "Plaintiffs"), has moved for an order pursuant to Rule 37(b), Fed.R.Civ.Pro., to strike the Answer of defendant Silverstein 33 Associates, L.P. ("SZS") and enter a default judgment against SZS on the issue of liability for willful and fraudulent failure to comply with discovery rules.

SZS has cross-moved for an order pursuant to Rule 37(b) dismissing the Plaintiffs' action for willful failure to comply with discovery rules or, in the alternative, for an order pursuant to Rules 33, 34, and 37 dismissing the Plaintiff's complaint or, in the alternative, imposing sanctions and compelling the Plaintiffs to fully and completely respond to SZS's interrogatories and demand for documents.

SZS also has moved for a protective order pursuant to Rule 26 limiting the scope of Plaintiffs' interrogatories as to time and location and an for an order appointing a Magistrate Judge to monitor document discovery.

Finally, SZS has moved for an order pursuant to Rule 37(a)(2) compelling the third-party defendants, The Port Authority of New York and New Jersey ("Port Authority") and Port Authority Trans–Hudson Corporation ("PATH"), and second third-party defendants, Tishman Construction Corporation of New York ("Tishman") and McLane Security, Inc. ("McLane"), to respond to SZS's interrogatories and document requests.

Oral argument was heard on these motions on December 16, 1992. At the close of the argument, the Court invited the parties to submit any additional papers addressing the issue of sanctions that may be imposed pursuant to Rule 37(b) short of striking SZS's Answer. The Plaintiffs submitted a letter brief to the Court on December 17, 1992 addressing this issue, and SZS submitted a responsive letter brief to the Court on December 30, 1992. These motions are considered submitted as of the latter date.

The Plaintiffs' Rule 37(b) motion is granted in part and denied in part. SZS's Rule 37(a)(2) motion is granted, and its Rule 37(b) cross-motion and Rule 26 motion are denied.

### The Parties

The Monaghans are New Jersey residents.

SZS, a Delaware limited partnership, owns property in the State of New York, specifically, the property located at 1275 Broadway in New York City, formerly known as the Gimbel's Building (the "Premises").

McLane and Tishman are New York corporations.

PATH is a governmental entity duly organized and existing under and by virtue of the laws of the States of New York and New Jersey and operates a public railroad transportation system.

The Port Authority is a corporate body politic duly organized and existing under and by virtue of the laws of the States of New York and New Jersey.

### The Facts and Prior Proceedings

The facts and prior proceedings are fully set forth in the prior opinions of this Court, familiarity with which is presumed. *See Monaghan v. SZS 33 Associates, L.P.*, No. 89 Civ. 4900 (RWS), 1992 WL 135821, 1992 U.S.Dist.LEXIS 7864 (S.D.N.Y. June 1, 1992) (*"Monaghan IV"*); *Monaghan v. SZS 33 Associates, L.P.*, No. 89 Civ. 4900 (RWS), 1991 WL 156377, 1991 U.S.Dist.LEXIS 10943 (S.D.N.Y. Aug. 8, 1991) (*"Monaghan III"*); *Monaghan v. SZS 33 Associates, L.P.*, 760 F.Supp. 355 (S.D.N.Y.) (*"Monaghan I"*), *aff'd*, 953 F.2d 635 (2d Cir.1991) (unpublished summ. order) (Nos. 91–7781, 91–7803, slip. op. (2d Cir. Dec. 5, 1991), referred to as *"Monaghan II"*). Only those facts relevant to the instant motions and cross-motion are presented below.

On March 23, 1987, Monaghan was shot in the head and severely brain damaged, during an attempted robbery. The attack took place as he passed through a vestibule and descended a stairway located on the Premises. He was on his way to the train station operated by PATH and the Port Authority located beneath the Premises.

At the time of the attack, the old Gimbel's building on the Premises was closed, and SZS had contracted with Tishman to undertake an extensive renovation and construction project on the Premises.

On July 14, 1989, the Plaintiffs brought this action against SZS on a theory of premises liability for negligently and knowingly permitting a dangerous condition to exist upon its premises.

### I. *Discovery and Pleading Prior to November 1990*

The Plaintiffs served a request for documents dated October 26, 1989 ("Original Request"). In response to the specific requests for documents pertaining to steps SZS had undertaken for the security of the premises, SZS denied that it provided security to the area where Monaghan was shot, stating that all security was provided by PATH and the New York City Transit Authority.

The Plaintiffs then filed a motion to compel the documents requested in the Original Request, which included documents concerning security services and correspondence addressing prior crimes in the area of the attack on Monaghan. SZS responded with a sworn affidavit stating that, while it had completed an "extensive" search, which included "days of diligent searching," it had been unable to produce any of the requested documents. Sanger Aff., July 12, 1990, at 4.

In light of SZS's sworn representations that it did not provide security in the subject area, that is did not have any documents regarding security, and that it never made inquiries regarding prior crimes in the area before purchasing the Premises in December 1986, the Plaintiffs agreed to limit document discovery requests to the time period running from the date SZS purchased the Premises to one year after Monaghan was shot. This agreement was memorialized in a Stipulation which was "so ordered" by this Court on July 23, 1990 ("Stipulation").

During the period from February 27, 1990 to October 30, 1990, SZS filed eight pleadings [1] in this action in which it consistently denied the following allegations: that SZS provided security services to the area of the Premises where Monaghan was shot; that SZS had knowledge that the crime against Monaghan was foreseeable; that SZS knew their actions created and increased the dangerous nature of the subject premises; that SZS did not comply with their own security objectives to provide comprehensive security and indigent control; that SZS provided armed guards to patrol the Premises; that documents existed demonstrating that SZS provided the security guards it hired with the radio equipment it had been advised to supply; that documents existed demonstrating that SZS reduced the security services provided during the weeks before Monaghan was shot; that documents exist demonstrating that SZS had a security system on the Premises; and that the security system was inoperative at the time of the attack on Monaghan.

### II. *SZS's Motion for Summary Judgment*

SZS moved for summary judgment in support of which it offered affidavits and a Rule 3(g) Statement stating that all discoverable documents had been produced and there were no disputed issues of fact. In response, the Plaintiffs immediately served another set of discovery requests to ensure that all relevant documents regarding the issue of security would be provided by SZS ("Second Request"). SZS moved, in turn, for a protective order concerning the Second Request and again filed a supporting affidavit in which it swore that a diligent search had been completed and that there were no other documents regarding the issue of security in its possession.

In *Monaghan I,* based upon SZS's representations, this Court granted that motion on alternative grounds: first, SZS did not owe Monaghan a duty of care because it was the dominant estate owner only with regard to the vestibule, not the stairway on which Mon-

---

1. These include the follow: Resp. to Demand for Production of Docs., dated Feb. 27, 1990; Df's Supplemental Resp. to Pl's. Demand for Docs., dated Mar. 6, 1990; Df's Aff. in Opp. to Pl's Mot. to Compel, dated July 12, 1990; Df's Second Supplemental Resp. to Pl's. Demand for Docs., dated Aug. 22, 1990; So–Ordered Stipulation, dated July 17, 1990; Df. Counsel's Aff. in Supp. of Mot. for Summ. J., dated Oct. 30, 1990; Justin Peyser Aff. in Supp. of Mot. for Summ. J., dated Oct. 26, 1990; Df's. Statement of Uncontested Facts Pursuant to Local R.3(g), dated Oct. 30, 1990.

aghan was attacked[2]; second, even if the attack took place in the vestibule, the danger of criminal assault there was not foreseeable; and third, even if the attack took place on the stairway, SZS owed Monaghan no greater duty of care than if the attack occurred in the vestibule.

In its summary order affirming *Monaghan I*, the Second Circuit held that, because the Plaintiffs could identify only two reported crimes that had occurred in the vestibule areas prior to the attack on Monaghan, the Plaintiffs had failed to advance sufficient evidence to create an issue regarding the duty of care SZS allegedly owed Monaghan. *See Monaghan II*, slip op. at 3.

### III. *Reinstatement of the Action*

Discovery continued in a companion case brought by the Plaintiffs against the security company, R.B. McLane Associates, *see Monaghan v. R.B. McLane Assoc., Inc.*, No. 90 Civ. 8246 (RWS)[3] ("*McLane* Action"), arising out of the same series of events.[4] Various documents came to light in the course of discovery that directly contradicted the position asserted by SZS and upon which the aforementioned motion for summary judgement had been granted. These documents are described more fully in *Monaghan IV*, 1992 WL 135821, at *3–*4, 1992 U.S.Dist.LEXIS 7864, at *4–*5.

In light of these documents, the Plaintiffs moved this Court pursuant to Rule 60(b)(2) to vacate its prior order· granting SZS summary judgment. The motion was granted in *Monaghan IV*. In granting that motion, this Court observed:

> it appears that SZS deliberately avoided turning over the Securities Procedures Document. It obviously side-stepped de-

livering the document during the first round of discovery and responded to the second round with an offensive maneuver seemingly designed to frustrate Monaghan's ability to ever receive the document. That this maneuver was successful until discovery was conducted in the *McLane* Action further highlights this point. Monaghan is therefore entitled to this presumption.

*Id.*, 1992 WL 135821, at *4, 1992 U.S.Dist.LEXIS 7864, at *11. SZS's explanation of its failure to produce was rejected:

> SZS contends that these documents were not within the scope of the original document demand. Such semantic niceties have no place in federal discovery matters. The documents were arguably within the scope of the request and definitely relevant to the subject matter involved. SZS's failure to turn over these documents constituted misconduct within Rule 60(b)(3)'s terms.

*Id.*, 1992 WL 135821, at *4, 1992 U.S.Dist.LEXIS 7864, at *10 (citations omitted).

### IV. *Post–Reinstatement Pleadings*

After this Court reinstated this action in *Monaghan IV*, in sworn affidavits and letters to this Court, SZS continued to deny that it possessed any documents relating to the hiring of security guards to patrol the Premises. These denials continued in the face of the invoices produced by McLane, which documented that SZS had, in fact, hired security guards from McLane.[5]

### V. *Subsequent Discovery*

After this action was reinstated, SZS proceeded to produce additional documents that

---

2. PATH was held to be the dominant owner of an easement on the Premises that included the stairway.

3. This case was subsequently consolidated with the present action.

4. It is noteworthy that in its responses to the Plaintiff's document requests, SZS failed to disclose that it hired McLane to provide services on the Premises and failed to identify and produce its contract with McLane which covered those security services.

5. In *Monaghan IV*, it was noted that SZS's continued denials on this point were simply unjustifiable:

> SZS also contends that the invoices and incident report were not in its files. However, the McLane invoices appear to be copies of documents sent to SZS and are plainly stamped "Paid." This contention thus makes little practical sense and is rejected.

1992 WL 135821, at *5 n. 4, 1992 U.S. Dist. LEXIS 7864, at *10 n. 4.

were relevant to the Plaintiffs' claims and related to the Original Request.

### A. *Letter of November 24, 1986*

In a letter dated November 24, 1986 (the "1986 Letter"), McLane's assistant to the corporate president wrote to SZS's corporate vice president, Arthur Miller ("Miller") in response to a request by SZS to evaluate the needs on the Premises and to recommend plans for a security force to patrol the Premises. This letter is dated one month prior to the time SZS purchased the Premises,[6] and it indicates that SZS had specific security objectives relating to a comprehensive security and indigent control plan. McLane recommended the use of eleven security guards, six of whom were to be armed, and various radio equipment to cope with the existing hazards on the Premises.

The 1986 Letter reveals that SZS was on notice regarding the dangerous condition of the Premises and had solicited a proposal to respond to it.

### B. *Invoices, Cancelled Checks, and the Ledger*

In opposing the Plaintiffs' Rule 60(2)(b) motion to reinstate this action, SZS filed affidavits stating that it did not possess invoices for security guard services produced by McLane.[7] After this Court reinstated the action in *Monaghan IV*, SZS produced copies of McLane invoices ("Invoices"), which were stamped "approved" and "paid," cancelled checks made payable to McLane, and a payment ledger. SZS produced the Invoices, whose existence it had so vigorously denied even after McLane produced them, on August 26, 1992.

The documents identified here reveal that SZS did not adopt McLane's proposal to hire eleven guards to patrol the Premises. Rath-

er, between December 22, 1986 and February 1, 1987, SZS employed four guards, and during the period from February 2, 1987 through March 23, 1987, the day Monaghan was shot, SZS employed three guards.[8]

### C. *Security Personnel Log*

After the Plaintiffs filed the present motion, SZS produced a Security Personnel Log ("Personnel Log") which lists the names of the security guards on duty and their schedules. This document, which identifies the names of potential witnesses for the Plaintiffs' liability claims, was responsive to the Original Request, and by failing to produce it in a timely manner, SZS contributed to the Plaintiffs' difficulty in locating witnesses with knowledge of SZS's security plan and the condition of the Premises at the time Monaghan was attacked.

### D. *Security System*

Equally relevant were the facts that SZS had a Detex security system ("Security System") on the Premises and that the system was rendered inoperative by the construction undertaken to renovate the Premises. Again, this information was disclosed for the first time by SZS only after the reinstatement of this action in *Monaghan IV*.

### VI. *SZS's Documents Refute Its Sworn Denials*

The documents SZS produced subsequent to the reinstatement of this action directly contradict its repeated sworn statements denying that it provided any security in the area of Monaghan's attack and that it had any notice of the dangerous conditions on the Premises. They also call into question the continuous representations SZS has made to this Court, in what now total thirteen distinct pleadings and documents, that documents such as these did not exist.[9]

---

6. Title to 1275 Broadway was transferred to SZS on or after December 22, 1986.

7. *See supra* note 5.

8. The question of whether and how many of these guards were actually armed remains outstanding.

9. In addition to the documents identified in *supra* note 1, the following documents submitted to this Court after October 30, 1990 fall into this category: Df. Counsel's Aff. in Supp. of Application for Protective Order, dated Nov. 26, 1990; Df Counsel's Affidavit in Opp. to Pl's. Mot. Pursuant to R. 60(b), dated Feb. 28, 1992; Df. Counsel's Supplemental Aff. in Opp. to Pl's. Mot. Pursuant to R. 60(b), dated May 12, 1992; Df.

## VII. *SZS's Justification of Its Denials and Explanation of Its Failure to Produce Documents in a Timely Manner*

To this point in this action SZS has repeatedly asserted that its responses to the Original and Second Requests were satisfactory because they were made only after diligent and thorough searches of all of their documents had been completed. Furthermore, SZS contends that it complied with the discovery agreement as set forth in the Stipulation, which limited the scope of discovery to the time period covering the date SZS purchased the Premises until one year after Monaghan was shot. Thus, in SZS's view, once the Stipulation was controlling, it had no obligation to produce documents that may have been responsive to the Original Request but were generated at a time before the Stipulation's cutoff date.

Now SZS also claims that its failure to produce the aforementioned documents was "an innocent and inadvertent failure," resulting from its lack of knowledge concerning the existence of these documents. Del Sordo Aff. in Opp., Nov. 16, 1992, at 2. SZS asserts that the Invoices and the 1986 Letter were not located until a massive search was undertaken for records in 1992, and at that time, these documents were located in sub-basement storage.

SZS excuses itself by contending that:

From 1987 until 1992, upon information and belief over 500,000 documents have been generated in connection with the purchase, construction, management and rental of A & S Plaza. There was no external regulatory or internal protocol for the retention of records at one location or with one custodian of records. The location of documents constantly changed. For SZS to have kept, sorted, filed and sorted every invoice or letter in connection with this project, so that they could be readily retrieved, would have involved a monumental cost and burden—one not even seen as necessary by any regulatory authority.

Counsel's letter to this Court in further opposition to Pl's Mot. Pursuant to R. 60(b), dated Mar. 13, 1992; Df. Counsel's Aff. in Supp. of SZS'

Defendant produced in 1990, those documents it found in 1990. Construction was still underway in sections of the building at the time, and every single location for documents was not known.

*Id.* at 2–3.

With regard to the diligence with which SZS responded to the Plaintiffs' Original and Second Requests, SZS stresses its efforts to locate and produce the requisite documents:

At all times, your affiant, checked, double checked and triple checked to insure the discovery requested was produced. There was never any reason to conceal or withhold documents. If anything, your affiant attempted to produce everything sincerely believed to be within the scope of the so-ordered stipulation, so that a summary judgment motion could be filed.

*Id.* at 8. SZS details the investigations it purportedly undertook to locate the requested documents, including those it subsequently produced.

In addition to emphasizing its attempts to search its files for documents, SZS now offers an additional explanation for its "innocent and inadvertent failure" to produce by relying on the knowledge of Miller, the aforementioned senior vice president of SZS, who was responsible for supervising and managing the construction operations at the Premises. Miller asserts that in 1990, at the time SZS represented to this Court that it had undertaken a diligent and extensive search of its files, SZS's files, which now for the first time are revealed to contain more than 500,000 documents, were actually "like a band of wandering gypsies," Miller Aff., Nov. 16, 1992, at 8, and it would have been easier to find the proverbial needle in a haystack than to produce any particular document from these ambulatory files because "at least a haystack stays in one place," *id.* at 11. In any event, according to Miller,

In 1989–1990, it would have been impossible to permit plaintiff's counsel to inspect all files since they were never in one loca-

Mot. for Certification for Interloc. Appeal, dated June 26, 1992.

tion, or under one person's control, and construction was still in progress.

*Id.*

Miller also states for the first time that despite or because of the constantly changing location of SZS's documents, "[t]here was not one custodian or depository for documents," *id.* at 5; "[d]ocuments were transported to a myriad of locations numerous times. No doubt many became lost due to relocations, and office moves," *id.* at 6; and "[d]ocuments were left unattended and unstored amongst construction debris on an open floor," *id.* at 7–8.

## VIII. SZS's Other Omissions During Discovery

It is notable that SZS offers Miller's Affidavit at this relatively late stage in these proceedings. Although Miller was the officer responsible for meeting with McLane to discuss security issues and was the recipient of the 1986 Letter, SZS did not contact him or search his files before moving for summary judgment. Had SZS contacted Miller at the time of the Original and Second Requests, he could have produced the 1986 Letter and all information regarding the nature and condition of SZS's files that he now provides by way of Affidavit.

SZS also failed to discuss the issues raised in the Requests with McLane and continued to deny a contractual relationship with McLane until McLane disclosed the 1986 Letter and Invoices during discovery in the *McLane* Action.

Finally, SZS failed to review the files of Angelo Croce, the SZS vice president who was in charge of operations at the Premises during the post-construction phases of the renovation of the Premises, before representing to the Plaintiffs and the Court that its document search was complete.

## IX. Consequences of SZS's Actions

The representations SZS made in responding to the Original and Second Requests,

entering into the Stipulation, and moving for summary judgment have harmed the Plaintiffs and misled this Court. In *Monaghan IV,* it was concluded that the failure to produce the documents it subsequently produced "substantially interfered with [the Plaintiffs'] ability to defend against SZS's summary judgment motion" and to prepare the proofs supporting the claims of the complaint. 1992 WL 135821, at *4, 1992 U.S.Dist.LEXIS 7864, at *12. In the absence of this evidence, the Plaintiffs were forced to abandon various theories regarding SZS's liability outlined in the complaint.

Additionally, it is highly probable that the tardy production of the Personnel Log contributed to the Plaintiffs' inability to locate witnesses with relevant knowledge regarding SZS's security plan for the Premises. Despite the fact that the Personnel Log was responsive to the Original Request, it was produced only after the Plaintiffs filed the present motion.[10] SZS, again, invokes the excuse of "inadvertent mistake" to explain this failure.

## X. Impleader Practice

On July 13, 1992, by order of the Court, SZS was granted permission to implead PATH and the Port Authority as third-party defendants, and on August 31, 1992, was granted permission to implead Tishman and McLane as second third-party defendants.

## Discussion

### I. The Plaintiffs' Rule 37 Motions

In light of the facts and procedural history of this action, the Plaintiffs move for an order imposing sanctions on SZS for failure to comply with the Original and Second Requests, and contend that the appropriate sanction is that of striking SZS's pleadings as is authorized by Rule 37(b) and entering a default judgment against SZS.

### A. The Standards for Rule 37 Sanctions

Rule 37(b)(2) provides that if a party fails to obey an order to provide or permit discovery, the court in which the action is pending

**10.** It is also noteworthy that in response to the Second Requests SZS produced the names of the security guards for all days *except* the day Monaghan was shot. It was not until this motion for

sanctions was filed that SZS produced the Personnel Log with the names of the six guards on duty on March 23, 1987.

has the discretionary power to take the appropriate action that would correct the failure in light of the considerations of justice. The Rule authorizes a variety of responses that may be appropriate in the face of a party's failure to comply. Possible actions a court may take include the following: order certain facts to be taken as established in accordance with the position of the party obtaining the order; prohibit the disobedient party from supporting or opposing certain claims, or from introducing certain matters in evidence; strike pleadings, stay proceedings, dismiss the action, or render a default judgment against the disobedient party; and impose monetary sanctions on the disobedient party by requiring that party or that party's attorney or both to pay reasonable expenses, including attorney's fees, caused by the failure. Fed.R.Civ.P., Rule 37(b)(2).

■ As this Court recently noted, "[t]he Court of Appeals has held that a party may be subject to the sanction of preclusion under Rule 37(b)(2)(B) only if the party has failed to obey 'an order' to permit or provide discovery." *United States v. Forma*, No. 88 Civ. 6458 (RWS), 1993 WL 15007, at *3, 1993 U.S.Dist.LEXIS 253, at *8 (S.D.N.Y. Jan. 13, 1993) (citing *Daval Steel Products, Div. of Francosteel Corp. v. M/V FAKREDINE*, 951 F.2d 1357, 1362–65 (2d Cir.1991)). The Second Circuit also has held that the order in question need not be a Rule 37(a) order to trigger Rule 37 sanctions; rather, the failure to comply with any court-issued discovery order can trigger Rule 37 sanctions. *See Daval Steel*, 951 F.2d at 1357.[11]

■ Once the sanctioning mechanism of Rule 37 is triggered, the various sanctions available to the court are to be employed with a view toward serving three fundamental purposes. *See International Mining Co. v. Allen & Co.*, 567 F.Supp. 777, 788–89 (S.D.N.Y.1983). First, they ensure that a party will not be able to profit from its own failure to comply with the requirements of discovery. *See Update Art, Inc. v. Modiin*

*Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir.1988); *Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir.1979). It follows that a relevant consideration in choosing the appropriate sanction is the extent to which the other party's preparation for trial has been prejudiced. *See Black Panther Party v. Smith*, 661 F.2d 1243, 1255 (D.C.Cir.1981), *vacated and remanded on other grounds*, 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982). Second, the sanctions constitute a specific deterrent by seeking to secure compliance with the particular order at hand. *See Cine Forty–Second St.*, 602 F.2d at 1066. Third, the general deterrent effect in enforcing strict adherence to the responsibilities litigants owe to the court and their adversaries is served. *See id.* at 1066–67; *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir.1989); *Black Panther Party*, 661 F.2d at 1256.

The choice of the appropriate sanction, consistent with these three purposes, lies within the discretion of the court after consideration of the full record in the case. *See National Hockey League*, 427 U.S. at 642, 96 S.Ct. at 2780. In crafting the appropriate sanction, the court should consider those factors "frequently cited by the Supreme Court and the Second Circuit":

1) the history of the failure to comply with court orders; 2) whether the party violating the order was given ample time to respond; 3) the effectiveness of alternative sanctions; 4) whether the noncomplying party was warned of and given an opportunity to argue against the impending sanction; 5) the prejudice to the adversary caused by the failure to comply; 6) whether the documents at issue would normally

11. In addition to its power to impose sanctions pursuant to Rule 37, this Court may invoke its inherent equitable powers and sanction a party for failure to produce even though that failure is not under the color of a formal discover order. *See, e.g., Turner v. Hudson Transit Lines, Inc.*, 142

F.R.D. 68, 73 (S.D.N.Y.1991) (courts have power to strike pleadings to remedy destruction of evidence, without prior court order, pursuant to Rule 37 and the court's inherent powers); *Computer Assoc. Int'l, Inc. v. American Fundware, Inc.*, 133 F.R.D. 166, 168 (D.Colo.1990) (same).

be readily obtainable; and 7) the extent of the party's personal responsibility.

*Burke v. ITT Automotive, Inc.*, 139 F.R.D. 24, 33 (W.D.N.Y.1991).

■ Rule 37's drastic sanctions, such as striking answers, dismissing actions, and entering default judgments are generally appropriate only when there is some element of culpability present in the actions of a party failing to comply with a discovery order, that is, the party's failure must be willful, in bad faith, or through fault. *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958); *Burke*, 139 F.R.D. at 32. Most often this culpability is demonstrated by a party's persistent refusal to comply with a discovery order. *See Trans World Airlines, Inc. v. Hughes*, 332 F.2d 602, 614 (2d Cir.1964); *Amway Corp. v. Shapiro Express Co.*, 102 F.R.D. 564, 569–70 (S.D.N.Y.1984); *see also United States v. Aldeco*, 917 F.2d 689, 690 (2d Cir.1990) (reversing default judgment for defendant's single failure timely to answer interrogatories).

### B. *Applying the Standards*

### 1. *Two Discovery Orders*

The threshold issue of whether SZS had an obligation to produce documents in conformity with formal discovery orders is satisfied by two orders which existed for Rule 37 purposes, namely, the so-ordered Stipulation of July 23, 1990 and the Opinion set forth in *Monaghan IV*. The Stipulation defined the scope of discovery as agreed to by SZS and the Plaintiffs, and *Monaghan IV* identified those documents that fell within the scope of the Original Request. In reinstating the Plaintiffs' action in *Monaghan IV*, the Court concluded that "SZS's failure to turn over these documents constituted misconduct within Rule 60(b)(2)'s terms." 1992 WL 135821, at *4, 1992 U.S.Dist.LEXIS 7864, at *10. Thus, in *Monaghan IV*, the Court assessed SZS's production of documents within the context of the Plaintiffs' Original and Second Requests and the Stipulation and found that its production was inadequate.

The Stipulation and *Monaghan IV* constitute formal discover orders, and SZS's failure to comply with them triggers the sanctioning mechanism of Rule 37. The remaining issues to consider are the nature of SZS's failure to comply, the sufficiency of the explanations SZS offers to justify its actions, and the sanctions that are warranted by SZS failure to comply.

### 2. *SZS Acted Negligently*

■ *Monaghan IV* suggested that SZS's failure to produce appeared to be a deliberate attempt on its part to avoid turning over various documents. *See* 1992 U.S.Dist.LEXIS 7864, at *11. Such a conclusion supports the Plaintiffs' allegation underlying this motion that SZS acted willfully and in bad faith by failing to comply with the Requests. However, in light of Miller's description of the chaotic state of SZS's voluminous documents since 1986, it cannot be concluded on this record that SZS's failure to produce was motivated by the degree of culpability involving willfulness, bad faith, or fraud that is necessary to trigger the harshest sanctions of Rule 37. While SZS's failure to comply was neither willful nor in bad faith, discovery has been abysmally administered by SZS, and SZS was grossly negligent with regard to locating, maintaining, and producing documents during the convoluted discovery phase of this action, extending from the inception of this action to the period after the present motion was brought by the Plaintiffs.

SZS's attempts to use the Stipulation as a shield against the Plaintiffs' Rule 37 motion are misguided. As the principal author of the Stipulation, upon whose representations it was based, SZS cannot now claim that any failure to comply was the result of ambiguities in it. When the Stipulation is considered within the broader context of the Plaintiffs' Original Request and SZS's representations regarding the documents in its possession at the time the Stipulation was so-ordered by this Court, SZS was under a continuing obligation to produce documents it located that were responsive to the Original Request, that it denied having in its possession, but that fell outside of the time frame set forth in the Stipulation.

SZS violated the Stipulation itself by failing to provide all relevant security agreements as required in ¶ 11; specifically, those agreements it entered into with McLane and the other related documents generated in the course of its business dealings with McLane. SZS also acted negligently in failing to pursue the question of documents with those officers of the corporation who had direct responsibility for the security and operations of the Premises on at least three separate occasions: first, when SZS responded to the Plaintiffs' Original Request; second, when SZS made sworn representations regarding documents in its possession to the Plaintiffs and the Court in securing the Stipulation; and third, when SZS was preparing its pleadings in support of its motion for summary judgment.

In light of *Monaghan I* and *Monaghan IV,* SZS has continued to act negligently in producing documents. Given the flurry of documents produced by SZS in the face of the Plaintiffs' present motion and its belated offer to produce all of the documents in its possession for the Plaintiffs' inspection, it is concluded SZS has continued to expose itself to Rule 37 sanctions for its actions. Most notable in this category of documents is the Personnel Log which identifies which security guards were on duty the day Monaghan was shot.

Finally, Miller's Affidavit raises the continuing specter of SZS's negligent storage and handling of relevant documents. It is reasonable to conclude from Miller's statements that it is highly probable that SZS negligently allowed relevant documents to be lost or destroyed over the years since Monaghan was attacked.

Therefore, SZS's violation of the Stipulation and *Monaghan IV* trigger the sanctioning mechanism of Rule 37.

### 3. *SZS Has Offered No Mitigating Excuse*

SZS has failed to offer any viable explanation of its conduct that would defeat the imposition of a Rule 37(b)(2) sanctions. SZS's repetition of "innocent and inadvertent mistakes" rings hollow against the expansive background of its behavior throughout the pre-trial phase of this action.

While SZS is correct in claiming that the Plaintiffs have failed to establish that SZS acted with the requisite willfulness, bad faith, or fraud to trigger the harshest sanctions of Rule 37, it is not the victim of "an innocent error in judgment," Del Sordo Aff. at 19, who had no control over or knowledge of its "wandering" and "debris covered" files.

■ Furthermore, SZS's assertion that sanctions cannot be imposed at this time because it has not received prior formal warning from the Court regarding its failure to comply is not the law in this Circuit. *See Daval Steel,* 951 F.2d at 1366 ("Parties have no entitlement to be 'warned' that they disobey court orders at their peril.").

■ Finally, SZS's contention that the Court cannot impose sanctions without first conducting an evidentiary hearing to evaluate whether they are warranted is incorrect. While the Second Circuit opinions cited by SZS call for such hearings, they do so in the context of determining the parties "willfulness" in failing to comply with the respective discovery demands. *See Flaks v. Koegel,* 504 F.2d 702 (2d Cir.1974); *McFarland v. Gregory,* 425 F.2d 443 (2d Cir.1970). The record on this motion more than adequately supports the conclusion that SZS was negligent in its failure to comply with the Stipulation and *Monaghan IV.* An evidentiary hearing would not materially assist the Court in reviewing this record, and therefore, there is no need to hold such a hearing. *See Wm. T. Thompson Co. v. General Nutrition Corp.,* 593 F.Supp. 1443, 1455 (C.D.Cal.1984).

The imposition of Rule 37 sanctions against SZS are warranted for its failure to comply with the discovery orders in the Stipulation and *Monaghan IV.*

### 4. *The Appropriate Sanction*

In order to determine what would constitute an appropriate sanction in the matter at hand, the Court solicited recommendations from the parties at Oral Argument. The Plaintiffs responded with a letter brief dated December 21, 1992, in which they, again, assert that nothing short of striking SZS's

answer and entering a default judgment on the issue of liability is mandated by Rule 37. While such a sanction would be appropriate on a showing of a willful and fraudulent failure to comply, such a drastic measure is not supported by this record.

An application of the various factors summarized in *Burke,* 139 F.R.D. at 33, to the facts and procedural history here results in the conclusion that an appropriate sanction is one that would focus on compensating the Plaintiffs for the damages they have incurred as a result of SZS's negligent actions. Specifically, SZS's negligence was a critical factor in the Plaintiffs' inability to successfully defend against SZS's motion for summary judgment in *Monaghan I* or appeal the entry of summary judgment in *Monaghan II,* and it was the ground upon which the Plaintiffs' Rule 60(b)(2) motion was granted in *Monaghan IV.*

The three underlying purposes of Rule 37 discussed above, *see International Mining,* 567 F.Supp. at 788–89, would be served best by SZS compensating the Plaintiffs for all reasonable costs, including attorneys' fees, that they have incurred defending against SZS's motion for summary judgment, appealing the granting of summary judgment, bringing the Rule 60(b)(1) motion in *Monaghan III,* bringing the Rule 60(b)(2) motion in *Monaghan IV* to reinstate the action, and bringing this present Rule 37 motion. *See Turner v. Hudson Transit Lines, Inc.,* 142 F.R.D. 68, 78 (S.D.N.Y.) (award of costs, including attorneys' fees, appropriate when defendant's reckless conduct resulted in loss of records and discovery responses misled the court and opposing counsel).

The late production of the Personnel Log and other documents has hampered the Plaintiffs' ability to locate witnesses, and crafting a sanction that will adequately correct this harm to the Plaintiffs is difficult. The prejudice the Plaintiffs have incurred on this score is real, but it is not significant enough to justify striking SZS's pleadings and entering a default judgment. However, because these witnesses would testify regarding the condition of property and SZS's efforts to provide security on it, an appropriate initial sanction is that of precluding SZS from raising as a defense the issue that it was not on notice regarding the condition of the Premises or the criminal activities taking place thereon. The Plaintiffs also are granted leave to submit additional recommendations regarding further corrective relief in this area.

## II. SZS's Cross–Motion

Not to be outdone by the Plaintiffs' Rule 37 motion, SZS moves for an order pursuant to Rule 37(b) dismissing the action for the Plaintiffs' willful failure to comply with discovery rules, or pursuant to Rules 33, 34, and 37, Fed.R.Civ.P., for sanctions, and for an order compelling the Plaintiffs to respond to SZS's interrogatories and request for documents. Rule 33 governs the use of interrogatories, while Rule 34 governs the use of the request for documents. While the well-worn adage that "the best defense is a good offense" may be a sound strategy on the gridiron, SZS's attempt to employ the strategy here is thoroughly misguided.

### A. The Plaintiffs' Answers to Interrogatories

SZS objects to several answers given by the Plaintiffs in response to SZS's first set of interrogatories, dated May 3, 1990, and to SZS's second set of interrogatories, dated October 1, 1992, on the ground that they are not responsive. However, an examination of each response against the history of this action reveals that no response is defective and that Rule 37 sanctions against the Plaintiffs are unwarranted.

■ SZS asserts that the Plaintiffs failed to provide information regarding prior crimes on and in the vicinity of the Premises. At the time of the Plaintiffs' response, they had no information regarding prior crimes but did supply what information they had compiled on the issue in opposing SZS's motion for summary judgment. The Plaintiffs learned of prior crimes in the subject area in the course of the testimony of police officer McGarry, who was deposed on April 28, 1992. Although SZS was no longer a party to the Plaintiffs' action at that time, SZS had an attorney present at McGarry's deposition,

who learned simultaneously with the Plaintiffs about the history of prior crime in the vicinity of Monaghan's attack.

SZS contends that the Plaintiffs' response of "none" to an interrogatory requesting photographs is defective. This is an accurate response because no photographs have been taken of Monaghan since the shooting.

■ SZS objects that the Plaintiffs have failed to respond to a request for expert information. Although the Plaintiffs did consult a security expert and potential trial expert, because discovery has not yet been completed, it is not unreasonable that the Plaintiffs have yet to designate trial experts, respond to Rule 26(b)(4) interrogatories, and produce a final expert report.

■ SZS contends that the Plaintiffs have willfully refused to supply responses to interrogatories addressing the negligence claims set forth in the complaint. This objection is disingenuous in light of both the numerous motion papers that the Plaintiffs have filed in this action, particularly the pleadings filed in opposition to SZS's motion for summary judgment, and SZS's own failure to produce relevant documents that the Plaintiffs require to develop the theories outlined in the complaint.

Finally, SZS alleges that the Plaintiffs have willfully refused to respond to interrogatories regarding damages. It is obvious that the Plaintiff have no motive to conceal any aspect of proof regarding damages, and to bring a Rule 37 motion on this ground at this stage of the proceedings is unjustifiable.

### B. *The Plaintiffs' Production of Documents*

■ SZS alleges that the Plaintiffs have failed to provide it with the photographs the Plaintiffs intend to introduce at trial. However, while the Plaintiffs do not know at this time what photographs it will introduce at trial, they have produced photographs taken by the district Attorney's Office and the Port Authority. Thus, for some time, SZS has been in possession of all photographs the Plaintiff possess.

■ SZS alleges that the Plaintiffs failed to provide it with pleadings and discovery from the *McLane* Action. The Plaintiffs' response that SZS should obtain the information from its commonly insured co-defendants was perfectly appropriate. This is especially true given that the SZS's attorneys were present at all of the depositions in the *McLane* Action and were unquestionably on notice regarding what has occurred in that action.

SZS also contends that the Plaintiffs willfully failed to provide SZS authorizations with which it could secure Monaghan's medical records. On or about July 16, 1990, however, the Plaintiffs did provide such authorizations to be used to obtain information regarding damages. On October 1, 1992, the Plaintiffs advised SZS that would supply upon request any additional authorizations SZS might need. As of December 1992, no additional authorizations had been requested of the Plaintiffs by SZS.

### C. *SZS's Rule 37 Motion is Denied*

SZS has failed to allege any actions on the part of the Plaintiffs with regard to their responses to the two sets of interrogatories and the request for documents in support of its contention that these responses are willfully fraudulent and trigger the sanctioning mechanism of Rule 37. Therefore, SZS's Rule 37 motion is denied.

### III. *SZS's Rule 26(c) Motion*

■ SZS moves pursuant to Rule 26(c), Fed.R.Civ.Pro., for a protective order limiting the scope of the Plaintiffs' interrogatories as to time and location, setting down dates for inspection of documents, and appointing a Magistrate Judge to monitor document discovery.

In support of this motion, SZS points to the terms of the Stipulation that memorialized the parties' agreement to limit the scope of time from transfer of title to the Premises to one year after the date of the attack on Monaghan. This is a curious ground upon which to justify the present request, given that it was precisely the inadvertent discovery of documents in SZS possession, such as the 1986 Letter, which were responsive to

the Plaintiffs' Original Request but which fell outside of the time frame specified by the Stipulation. This fact alone gives this Court pause to grant SZS's motion, but even more pertinent is SZS's recent revelation concerning the massive number of documents that it has identified as being in its possession.

In light of Miller's statements regarding the existence and condition of more than 500,000 documents, it is unacceptable at this stage in these proceedings to impose upon the Plaintiffs what is ultimately SZS's burden, to wit, that of locating, identifying, and organizing its own documents. It is entirely unreasonable to subject the Plaintiffs to SZS's wandering haystacks of matter unorganized.

Further, to limit the scope of interrogatories when SZS has only now revealed the volume of documents in its possession would invite the possibility of creating a situation similar to that in which the parties and the Court found themselves at the time of the Plaintiffs' Rule 60(b)(2) motion. There is no need to impose arbitrary limits on the scope of discovery at this time.

Therefore, SZS's Rule 26(c) motion is denied with leave to renew.

### IV. *SZS's Rule 37(a)(2) Motion*

Finally, SZS moves for an order pursuant to Rule 37(a)(2) compelling the Port Authority, PATH, Tishman, and McLane to respond to SZS's interrogatories and document requests.

On July 13, 1992, SZS served McLane and Tishman a demand for insurance policies, and as of November 3, 1992, SZS had not received any response. After the Port Authority and PATH answered the third-party complaint in September 1992, SZS served interrogatories and a request for documents on these four parties. As of November 3, 1992, no responses had been received, and no party had requested an extension of time.

Therefore, to the extent that any of the discovery requests continue to be outstanding, SZS's motion is granted and the parties are ordered to comply within twenty (20) days of the date of this opinion.

### Conclusion

For the reasons set forth above, the Plaintiffs' Rule 37(b) motion is granted, but the specific relief sought by the Plaintiffs is denied. Rather, SZS is precluded from raising the defense that it was not on notice regarding the condition of the Premises or the criminal activities taking place thereon, and the Plaintiffs are requested to submit an itemized statement of the reasonable expenses and attorney's fees they have incurred in opposing SZS's motion for summary judgment, appealing the decision in *Monaghan I,* bringing the Rule 60(b)(1) and 60(b)(2) motions, and bringing the present Rule 37(b) motion. SZS's Rule 37(b) cross-motion and Rule 26 motion are denied, and its Rule 37(a)(2) motion is granted.

It is so ordered.