Eleanor MONAGHAN, Individually and as Guardian Ad Litem for William Monaghan, an incompetent, Plaintiffs,

v.

SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Defendant.

SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Third–Party Plaintiff,

v.

The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, and Port Authority Trans–Hudson Corp., Third–Party Defendants.

SZS 33 ASSOCIATES, L.P., a Delaware Limited Partnership, Second–Third–Party Plaintiff,

v.

TISHMAN CONSTRUCTION CORPORATION OF NEW YORK, McLane Security, Inc., Second–Third–Party Defendants.

No. 89 Civ. 4900 (RWS).

United States District Court, S.D. New York.

April 6, 1994.

Levy Phillips & Konigsberg, New York City (Alan J. Konigsberg, of counsel), for plaintiffs.

Bower & Gardner, New York City (Warren Sanger, of counsel), for defendant SZS 33 Associates, Inc.

Lester Schwab Katz & Dwyer, New York City (Adam Hurwitz, of counsel), for defendant McLane Associates, Inc.

Gordon & Silber, New York City (Steven Sold, of counsel), for defendant Tishman Const. Corp.

The Port Authority of NY and NJ, New York City (Keith Harris, of counsel), for defendants Port Authority.

### OPINION

SWEET, District Judge.

Defendant and third-party plaintiff Silverstein 33 Associates, L.P. ("SZS") moves for an order, pursuant to Rule 37, Fed.R.Civ.P., of default judgment and sanctions against the Port Authority of New York and Port Authority Trans–Hudson Corp. ("Port Authority") for failure to comply with certain discovery requests. For the reasons set forth below, SZS' request is granted in part.

Oral argument was heard on January 12, 1994 and the application was considered fully submitted as of that date.

### The Parties

The Monaghans are natural persons who reside and are domiciled in the State of New Jersey.

SZS, a Delaware limited partnership, owns property in the State of New York, specifically, the property located at 1275 Broadway in New York City, formerly known as the Gimbels' Building (the "Premises").

McLane and Tishman are corporations duly organized and existing under the laws of the State of New York.

The Port Authority of New York and New Jersey (the "Port Authority") and the Port Authority Trans–Hudson Corp. ("PATH"), are governmental entities duly organized and existing under and by virtue of the laws of the States of New York and New Jersey and operate a public railroad transportation system.

### The Facts and Prior Proceedings

The facts and prior proceedings in this diversity action are fully set forth in the prior opinions of this Court, familiarity with which is assumed. See Monaghan v. SZS 33 Assocs., L.P., 89 Civ. 4900, slip op. (S.D.N.Y. Feb. 1, 1994) ("Monaghan VIII"); Monaghan v. SZS 33 Assocs., L.P., 153 F.R.D. 60 (S.D.N.Y.1994) ("Monaghan VII"); Monaghan v. SZS 33 Assocs., L.P., 827 F.Supp. 233 (S.D.N.Y.1993) ("Monaghan VI"); Monaghan v. SZS 33 Assocs., L.P., 148 F.R.D. 500 (S.D.N.Y.1993) ("Monaghan V"); Monaghan v. SZS 33 Assocs., L.P., No. 89 Civ. 4900, 1992 WL 135821, 1992 U.S. Dist. LEXIS 7864 (S.D.N.Y. June 1, 1992) ("Monaghan IV"); Monaghan v. SZS 33 Assocs., L.P., No. 89 Civ. 4900, 1991 WL 156377, 1991 U.S. Dist. LEXIS 10943 (S.D.N.Y. Aug. 8, 1991) ("Monaghan III"); Monaghan v. SZS 33 Assocs., L.P., 760 F.Supp. 355 (S.D.N.Y.) ("Monaghan I"), aff'd, 953 F.2d 635 (2d Cir. 1991) (unpublished summ. order) (Nos. 91–7781, 91–7803, 1991 WL 281446, slip. op. (2d Cir. Dec. 5, 1991), referred to as "Monaghan II"). Only those facts relevant to the instant motion are presented below.

On March 23, 1987, Monaghan was shot in the head and severely brain damaged during an attempted robbery. The attack took place as he passed through a vestibule or lobby area (the "Vestibule") and descended a stairway ("Stairway 307," originally Stairway No. 1) located on the Premises. He was on his way to the train station operated by PATH and the Port Authority located beneath the Premises.

At the time of the attack, the old Gimbels' Building on the Premises was closed, and SZS had contracted with Tishman to undertake an extensive renovation and construction project on the Premises.

On July 14, 1989, the Plaintiffs brought a diversity action against SZS on a theory of premises liability for negligently and knowingly permitting a dangerous condition to exist upon its premises (the "SZS Action"). On December 28, 1990, the Plaintiffs brought a diversity action against McLane and Tishman on a theory of liability for negligently, recklessly, and carelessly securing the Prem-

ises and thereby proximately causing Monaghan's injury (the *"McLane Action"*).

After two rounds of discovery, SZS moved for summary judgment. In *Monaghan I,* based upon SZS' representations, this Court granted that motion on alternative grounds: first, SZS did not owe Monaghan a duty of care because it was the dominant estate owner only with regard to the Vestibule, not Stairway 307 on which Monaghan was attacked;[1] second, even if the attack took place in the Vestibule, the danger of criminal assault there was not foreseeable; and third, even if the attack took place on Stairway 307, SZS owed Monaghan no greater duty of care than if the attack occurred in the Vestibule.

In its summary order affirming *Monaghan I,* the Second Circuit held that, because the Plaintiffs could identify only two reported crimes which had occurred in the vestibule areas prior to the attack on Monaghan, the Plaintiffs had failed to advance sufficient evidence to create an issue regarding the duty of care SZS allegedly owed Monaghan. *See Monaghan II,* slip op. at 3.

As set forth in detail in *Monaghan IV* and *Monaghan V,* the Plaintiffs' subsequent motion to vacate the summary judgment and reinstate this action was granted after this Court found that SZS had deliberately failed to produce various relevant documents. In *Monaghan V,* this Court also granted the Plaintiffs relief pursuant to Rule 37, Fed. R.Civ.P., in the form of "precluding SZS from raising as a defense the issue that it was not on notice regarding the condition of the Premises or the criminal activities taking place thereon." 148 F.R.D. at 511.

Following the reinstatement of this action, SZS was granted permission to implead PATH and the Port Authority as third-party defendants. SZS filed the third-party complaint naming them as third-party defendants on July 14, 1992. SZS also was granted permission to implead McLane and Tishman as second third-party defendants, and SZS filed that second third-party complaint on September 21, 1992. The *SZS Action* and the *McLane Action* were consolidated under the single caption set forth above by order of the Court on July 8, 1992.

In *Monaghan VI,* the Rule 56, Fed.R.Civ. P., motions for an order granting defendants and second third-party defendants McLane and Tishman summary judgment against the Plaintiffs were granted. The Rule 56 motions of the Port Authority and of PATH, for order granting them summary judgment against SZS' third-party complaint were denied. The motion of defendant and third-party plaintiff SZS, brought pursuant to Rule 56, for an order granting summary judgment in its favor against the Plaintiffs was denied as was the motion, brought by SZS and McLane pursuant to Rule 42, Fed.R.Civ.P., for bifurcated trials on the issues of liability and damages. Finally, the motion of SZS and McLane for an order excluding Monaghan from the courtroom during the trial was granted.

In *Monaghan VII,* this Court denied Defendant SZS' motion for certification to appeal, pursuant to 28 U.S.C. § 1292(b), as well as its motion to reargue, pursuant to Local Rule 3(j), the Court's opinion in *Monaghan VI,* which denied SZS' motion for summary judgment. Likewise, the Court denied Plaintiff Eleanor Monaghan's motion to reargue, pursuant to Local Rule 3(j), the Court's decision in *Monaghan VI* dismissing the action against defendants and second third party defendants McLane and Tishman as time barred.

In *Monaghan VIII,* this Court awarded substantially reduced attorneys' fees to the Plaintiffs' attorneys—who had neglected to keep the required contemporaneous time records for such awards—in conformance with the Opinion in *Monaghan V.*

### *Discussion*

#### I. *The Legal Standards for Rule 37 Sanctions*

█ This Court has extensively outlined the standards for the application of a Rule 37 sanctions. *See Monaghan V,* 148 F.R.D. 500, 507–09 (S.D.N.Y.1993). To summarize, as

---

1. PATH was held to be the dominant owner of an easement on the Premises that included the stair-

way.

noted in *Monaghan V*, there are three underlying purposes of Rule 37, to wit: (1) to ensure that a party will not be able to profit from its failure to comply with discovery requirements; (2) to act as a specific deterrent in securing compliance with a particular order; and (3) to act as a general deterrent in enforcing adherence to the courts overseeing parties to litigation. *See Monaghan V*, 148 F.R.D. at 508 (citing *Int'l Mining Co. v. Allen & Co.*, 567 F.Supp. 777, 788–89 (S.D.N.Y.1983)).

## II. SZS' Claims Against the Port Authority

SZS contends that the Port Authority wilfully or negligently failed to produce all of the police reports of crimes in the area, when initially directed by this Court in 1990 and that as a result of this failure, it was not until 1994 that SZS received reports of nine robberies which occurred between March of 1986 and March of 1987 on the stairway in question. SZS claims that the Port Authority continues to withhold relevant information and that these practices have substantially altered the course of this litigation. For the reasons stated below, the Court finds that SZS' complaint against with the Port Authority has significant merit.

### A. The Port Authority's Discovery Compliance Record was Inadequate

■ The Port Authority has either wilfully or negligently failed to comply with the discovery orders of 1990. As an initial matter, the Port Authority was placed on notice at the time the Plaintiffs filed a Notice of Claim, within 60 days of the attack against Monaghan.[2] Subsequently, the suit against SZS was commenced in August, 1989. For the following year both the Plaintiffs and the Defendants had extreme difficulties in obtaining relevant information from the Port Authority concerning the nature, scope, re-

sponsibility, control and past criminal activities on the premises at issue.

In 1990, Monaghan's counsel served notice for discovery and a subpoena on the Port Authority relative to the vestibule, entrance and stairway. This request included a demand for all the police complaints of crimes in the area. Pursuant to a motion to quash the subpoena, the Court limited document production to one year prior and six-months subsequent to the March 23, 1987 attack on Monaghan.[3]

Both Plaintiffs' and SZS' counsel had substantial difficulties in obtaining production of the necessary documents from the Port Authority. *See* Pls.' letter to Court of June 21, 1990 ("Unfortunately, plaintiff has encountered comparable difficulties in obtaining production of necessary documents and records from the [Port Authority] in this action."); Pls.' letter to Court of Nov. 6, 1990 (complaining of Port Authority's employees vacation schedules increasing delays in depositions and discovery); *see also* SZS Defs.' letter to the Court of June 11, 1990 ("Port Authority has not produced the documents requested.").

Pursuant to persistent discovery requests, and the Opinion of this Court, *see Monaghan V*, 148 F.R.D. at 513 (ordering Port Authority, PATH, Tishman and McLane to respond to SZS' interrogatories and document requests within 20 days), the Port Authority in late 1993 produced nine complaints of armed robberies which they failed to disclose to either the Plaintiffs or the Defendant SZS at the appropriate time in 1990. *See* Del Sordo Aff. Ex. D. Additionally, for the same period of time, the Port Authority has now produced documents establishing that more than 100 incidents of criminal activity which were reported to the Port Authority.

Accordingly, there is little doubt that there was a substantial history of criminal activity at the site about which the Port Authority

---

**2.** That suit was dismissed partially on the basis that the allegations of the Complaint failed to state a viable action against a governmental entity for failure to provide police protection. *Monaghan v. Port Authority of New York and New Jersey*, No. 40281/88 (N.Y.Sup.Ct. Apr. 25, 1988). The Court of Appeals affirmed the dismissal. *Monaghan v. Port Authority of New York and New*

*Jersey*, No. 27719/87 (N.Y.App.Div. Oct. 24, 1988); *see also* Del Sordo Aff. Ex. A.

**3.** For the time period of SZS' ownership (December 1986 to March 23, 1987) only three complains of non-violent activity were produced. Del Sordo Aff. Ex. C.

either was or should have been well aware. To a large extent, the initial dismissal on SZS' first summary judgment motion was based on the Court's understanding that there was no indication of prior violent crimes on the property, and accordingly, no duty existed to provide security on the premises, *see Monaghan I*, 760 F.Supp. 355, 360–62 (S.D.N.Y.), *aff'd*, 953 F.2d 635 (2d Cir. 1991) (unpublished summ. order). It is apparent that that determination, and the subsequent tortured course of this action, would have been very different if the Port Authority had properly complied with the discovery requests of the Plaintiffs and SZS.

### B. The Port Authority's Sanction

 The Port Authority, in its defense, claims that the it duly complied with discovery in that it provided information concerning the "location" of the alleged attack. The Port Authority then states that the " 'location' does not include the many other identifiable areas of the 33rd Street Station such as the train platforms, the underground concourse area, the entrance at 30th Street and Broadway, the station turnstile area, the passageway from the Transit Authority property at their 34th Street Station, the track area and the tunnel area." Harris Aff. ¶ 4.

However, the discovery orders in question were worded in very broad terms and there is no disputing the fact that information that the Port Authority ultimately produced in late 1993 was readily available to it in 1990. Therefore, the Port Authority's delinquent discovery practices have caused the Plaintiffs, Defendants SZS, as well as the other parties unnecessary and wasteful delays and excessive litigation expense. Parenthetically, the Court is disturbed at the amount of discovery abuses in this tragic case.

The Court finds that as both the SZS as well as the Plaintiffs have been harmed by the Port Authority's abusive discovery practices, the Port Authority will be forced to swallow a bitter pill similar to the one served SZS in *Monaghan V*, 148 F.R.D. at 511, that is to say, the Port Authority is now precluded from raising as a defense that it was not on notice regarding the criminal activities taking place specifically on the premises as well as generally in the vicinity.

Port Authority is directed to pay SZS' counsel fees for the costs of bringing this Rule 37 motion.

### Conclusion

For the reasons set forth above, the Port Authority is sanctioned, pursuant to Rule 37, in that it may not raise the defense that it was not on notice regarding the criminal activities which had taken place on or near the premises and that it will pay SZS' fees and costs of bringing this motion. Settle order on notice.

It is so ordered.